## Griffith et al. v. Daniel.

March 21, 1947.

J. F. Bailey, Judge.

J. L. Harrington and Fred Howes for appellants.
Wheeler & Wheeler for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This suit involves title to two scraps of land on Road Fork Branch of Tom's Creek, in Johnson County. One is 5 by 110 feet, and its ownership depends upon the proper location of a division line. The other is a portion of an old County road right-of-way, left, in part, in the re-building of the road. It is an irregular triangle, perhaps 40 feet at its extreme width and about 175 feet long. A vexatious spirit of controversy and litigation on the part of the appellants seems to be the motivating cause of this suit rather than the value of the property. Perhaps three-fourths of the four volumes of depositions are irrelevant.

The appellant, Mrs. Nannie Griffith, formerly owned a four-acre parcel, now owned by the appellee, Mrs. Lena Daniel. She conveyed it to Meeks in March, 1922, and he to Mrs. Daniel in December, 1923. The land from which it was taken was conveyed to another, except a graveyard adjoining the four-acre parcel on the west. The pertinent description in the deeds forming the boundary between the graveyard and appellee's property is: "Beginning at a stone in the ground marked "A" on line of T. J. Preston; thence an easterly course a distance of 65 feet to a stone set in the ground, marked "B"; thence a distance of 110 feet to a county road to a stone set in the ground marked "H"; thence with the County Road to the ford." etc.

The question is the location of the 110 foot line from "B" to "H" between appellee's property and appellants' graveyard. The appellant, through her husband, tore down the division fence with the intention of re-building it five feet to the east. Deeming this an encroachment, Mrs. Daniel brought the suit for an injunction. Her proof is that the fence was on the line; that it had been built as a partnership fence seven or eight years previously, in the exact place of an old fence which was there when Mrs. Griffith conveyed the parcel to Meeks in 1922, and when the plaintiff acquired it the next year. At that time the marked corner stones called for in the deed were in place. They have since been removed by some unknown person. She had built a chicken house on the northwest corner of her property close to the line. The plaintiff's surveyor had the beginning point "A" shown him by the plaintiff's husband and a disinterested party as being in a clump of elm

sprouts in place of a tree that was gone. Running the 65 foot line, he found the stump of a fence post on the corner "B". Running the 110 foot line southwardly to the creek, he found a corner stone marked "H," but the line extended 8 or 10 feet beyond it to the old road right-of-way. Several witnesses testified to the former existence of the several corner stones and the old fence, as plaintiffs claimed. The stone marked "H" at the end of the line had been moved northwardly to prevent it from being destroyed in the re-building of the road. All of this and other evidence not necessary to relate surely proved the plaintiff's contentions.

On the other side, the defendants claimed the beginning of the upper line "A" was five feet east from where the plaintiffs claimed and that the corner at the end of the 65 foot line was inside plaintiff's chicken house, and the 110 foot line ran five feet east of the old fence line. Mrs. Griffith's husband, her active agent and the one who stirred up the litigation, testified that he built the original fence around the cemetery in 1913 or 1914, and when they sold the four-acre parcel he had deliberately fixed the line five feet east of the cemetery fence in order that his wife might have complete control over it. He denied that in re-building the fence in 1936 or 1937, he had consulted Daniel, and denied that the Daniels bore any part of the cost of the new fence. The defendants disclaimed any knowledge of who moved the corner stones or when they were moved. Without a further review of the lengthy testimony, it seems sufficient to express the conclusion that we concur, without hesitation, in the decision of the chancellor that the old fence is the correct division line as is contended for by the plaintiffs and appellees, Mrs. Daniel and husband.

As disclosed in the above description, the southern line of appellee's parcel was the county road. The evidence is conflicting as to whether the road, which was very rough, ran in the creek or north or south of it at this point. It is quite well shown that when this road was built in 1940, the northern part of the right-of-way of the new road covered a substantial part (perhaps one-half) of the right-of-way of the old creek road. This left a strip contiguous to the plaintiff's parcel.

In an answer and counterclaim, the defendants

claim title to this strip of land through a deed from Green Burke, dated November 25, 1940, and asked that Mrs. Griffith's title to it be quieted. The description in the Burke deed as given in the pleading is indefinite and general, merely being "all the land we own north of the State road right-of-way and the land joining * * * the cemetery lot of Nannie Griffith, and the line of Scott and Lena Daniel," etc. The deed was not filed. When Griffith was asked why he bought this strip, which would cut Daniel's property off from the road, he replied: "That is my private business." He let the matter rest there. So do we.

Appellants present counsel, who did not represent them in the circuit court, practically concedes, as he should properly concede, that if there was a reversion of the old roadbed by reason of its abandonment, the north half would go back to the appellee's parcel of land. That would seem to settle the issue as between these parties. We may say here also that we have no hesitation in concurring in the judgment which denied the defendants and counterclaimants any right to this strip of land.

Wherefore the judgment is affirmed.